IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED

JUN 10 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N D I C T M E N T** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. **1 :26 CR 0 0 2 8 7** |
| | ) | |
| GLADYS MARINA CAAL CHEN, | ) | Title 18, United States Code, |
| aka GLADIS MARINA CAAL CHEN, | ) | Sections 1001(a)(2) and 2 |
| | ) | |
| Defendant. | ) | **JUDGE FLEMING** |

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

The U.S. Department of Health and Human Services
Office of Refugee Resettlement's Unaccompanied Alien Children Program

1.     The United States Department of Health and Human Services (HHS) was a department within the Executive Branch of the United States government.

2.     Unaccompanied Alien Children (UACs) who were apprehended by the Department of Homeland Security (DHS) immigration officials or another federal agency, were transferred to HHS's Office of Refugee Resettlement (ORR), which was responsible for the care and custody of UACs awaiting immigration proceedings.

3.     UACs were defined as individuals who had no lawful immigration status in the United States, were under 18 years of age, and had no parent or legal guardian in the United States or no parent or legal guardian in the United States was available to provide care and physical custody.

4.     ORR usually retained custody until UACs: (1) were released to a parent, guardian, relative, or other qualified sponsor; (2) were transferred to foster care; or (3) turned 18 years old.

5.     The process of releasing a UAC from ORR custody to a sponsor involved several steps, including, but not limited to, the identification of sponsors, the submission of sponsor application materials, and an assessment of sponsor suitability, which included verification of the sponsor's identity and relationship, if any, to the child. "Case Managers" were personnel who managed the sponsorship assessment process. "Clinicians" and others also sometimes participated in the process.

6.     Sponsors were required to submit a "Family Reunification Application" and documents that verified the sponsor's identity and claimed relationship between the sponsor and the UAC, among other documents. Many sponsors also submitted an "Authorization for Release of Information."

7.     A birth certificate and certain government-issued identification cards were among a list of acceptable documents to demonstrate a sponsor's identity.

8.     Pursuant to applicable ORR policies in place during the relevant period, the vetting process was less or more rigorous depending on the relationship of the prospective sponsor to the UAC. Purported parents, legal guardians, and siblings' sponsorship applications received less scrutiny than applications submitted by prospective sponsors who were unrelated to the UACs.

9.     After submission of the Family Reunification Application, Authorization for Release of Information, and other documents, ORR evaluated the materials, took other assessment actions, and determined whether an individual was an appropriate sponsor before releasing a child from ORR to the sponsor.

### The Defendant's Family Reunification Application and Authorization for Release of Information Containing False Statements

10.     GLADYS MARINA CAAL CHEN aka GLADIS MARINA CAAL CHEN (hereafter "CAAL CHEN") is a Guatemalan national born on or about XX/XX/2005 (redacted).

11.     In or around August 2022, CAAL CHEN was encountered by U.S. immigration authorities in or around Hidalgo, Texas. U.S. immigration authorities determined that CAAL CHEN had entered the United States illegally and was a UAC. CAAL CHEN was transferred to ORR's care and custody. In or around January 2023, CAAL CHEN was transferred to the care of a sponsor. In June 2023, a final order of removal was issued to CAAL CHEN in absentia.

12.     UAC-1 was a fifteen-year-old male Guatemalan national when he illegally entered the United States on or about December 23, 2023.

13.     After he was apprehended by DHS, UAC-1 was transferred to an HHS-funded care provider on or about December 25, 2023, where he remained for approximately 135 days. UAC-1 was then transferred to long-term foster care.

14.     CAAL CHEN submitted and caused to be submitted to the HHS-funded care provider the Spanish-language versions of a Family Reunification Application and an Authorization for Release of Information, both with a signature date of January 1, 2024, seeking to sponsor UAC-1.

15.     In the Family Reunification Application, CAAL CHEN made multiple materially false statements, including:

   a.     CAAL CHEN falsely claimed that she was UAC-1's sibling when in fact she was not; and

   b.     CAAL CHEN claimed her name was F.C.C. when in fact this was not her true name.

3

16. Defendant signed the Family Reunification Application, which included the following declarations:

    a. "I declare and affirm under penalty of perjury that the information contained in this application is true and accurate to the best of my knowledge."

    b. "I attest that all documents I am submitting or copies of those documents are free of error and fraud."

    c. "I further attest that I will abide by the care instructions contained in the *Sponsor Care Agreement.*"

    d. "I will provide for the physical and mental well-being of the child(ren). I will also comply with my state's laws regarding the care of this child including: . . . Protecting the child(ren) from abuse, neglect, and abandonment . . ."

17. In the Authorization for Release of Information, which CAAL CHEN signed under the penalty of perjury, CAAL CHEN made materially false statements, including the false claims that she was UAC-1's sibling and her name was F.C.C.

18. In or around March 2024, the HHS-funded care provider discontinued its consideration of CAAL CHEN's application to sponsor UAC-1, based at least in part on its concern CAAL CHEN had made false representations in the Family Reunification Application and Authorization for Release of Information.

COUNT 1

(Making a False, Fictitious, and Fraudulent Statement, 18 U.S.C. §§ 1001(a)(2) and 2)

The Grand Jury charges:

4

19. The factual allegations contained in paragraphs 1 through 18 of this Indictment are incorporated by reference as if stated fully herein.

20. On or about January 1, 2024, in the Northern District of Ohio, Eastern Division, CAAL CHEN did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations, and did aid and abet the making of materially false, fictitious, and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, CAAL CHEN stated in an ORR Family Reunification Application that her name was F.C.C. and she was UAC-1's sibling when, in fact, as she then well knew, CAAL CHEN was not named F.C.C. and was not UAC-1's sibling.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

5